Filed 3/21/24

CERTIFIED FOR PARTIAL PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| TRIDENT SOCIETY, INC., | C098017 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2022-80003804-CU-WM-GDS) |
| v. | |
| CEMETERY AND FUNERAL BUREAU, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed.


Gurnee, Mason, Rushford, Bonotto & Forestiere, Steven H. Gurnee, Candace H. Shirley; Gibson, Dunn & Crutcher, Winston Y. Chan and Elizabeth K. McCloskey for Plaintiff and Appellant.

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

1

Rob Bonta, Attorney General, Carl W. Sonne, Assistant Attorney General, Joshua A. Room and Christopher M. Young, Deputy Attorneys General, for Defendant and Respondent.

The Short Act (Bus. & Prof. Code,[1] § 7735 et seq.) governs agreements by funeral establishments pertaining to "the final disposition of human remains or for funeral services or for the furnishing of personal property or funeral merchandise, wherein the use or delivery of those services, property or merchandise is not immediately required" (§ 7735). These agreements are known as preneed agreements or preneed contracts. The Short Act requires a funeral establishment to hold money it has received pursuant to a preneed agreement, and "any agreement collateral thereto," in trust until the funeral establishment performs the contract. (§ 7735.) The Short Act, however, contains a provision providing that "[n]othing in this article shall apply to cemetery property; cemetery commodities; cemetery service; or merchandise that is delivered as soon as paid for." (§ 7741.)

Defendant the Cemetery and Funeral Bureau (Bureau) interprets the above language to prohibit plaintiff Trident Society, Inc.'s (Trident) practice of excluding from the trust requirement money paid to purchase merchandise that was delivered and that was purchased as part of a package that included preneed cremation services. To Trident, section 7741 exempts its contract selling merchandise from the trusting requirement, regardless of the collateral nature of that contract, because Trident delivered the merchandise.

In the published portion of this opinion, we agree with the Bureau that the Short Act requires all money paid under and collateral to a preneed contract be held in trust, and that the contract for merchandise at issue here was collateral to the preneed contract.

---

[1]     Further section references are to the Business and Professions Code unless otherwise indicated.

In the unpublished portion of this opinion, we affirm the Bureau's finding Trident made misrepresentations in the agreements for preneed services and merchandise. Accordingly, we affirm the trial court's order denying Trident's petition.

FACTUAL AND PROCEDURAL BACKGROUND

In 2016, T.G. contracted with Trident for his own cremation services. Trident presented T.G. with a general price list (price list), consisting of two pages. On the first page was a disclaimer providing, "The goods and services shown below are those we can provide to our customers. You may choose only the items you desire. However, any funeral arrangements you select will include a charge for our basic service and overhead. If legal or other requirements mean you must buy any items you did not specifically ask for, we will explain the reason in writing on the statement we provide describing the funeral goods and services you selected."

Below the disclaimer is a box with the heading "THE STANDARD TRIDENT PLAN – $2,104.00" (standard plan). The standard plan is described as including "the Trident [p]reneed [d]irect [c]remation [p]ackage (preneed [agreement]) and the Trident [m]emento [p]ackage (retail [agreement])." Below this statement is a list of items and services included in the preneed agreement, which the price list indicates is sold on a preneed basis. The price list then describes the items in the retail agreement, which "[are] sold on a retail basis and [are] not included on any [p]reneed [f]uneral [a]greement."

The second page of the price list includes itemized lists of services and merchandise provided by Trident, with an asterisk by services and merchandise included in the standard plan. Again, the price list provides that many of the services are sold on a preneed basis and the customer may choose only those services they desire. The list of services included in the preneed agreement contains a processing fee of $234 with an asterisk, indicating the processing fee applies to the standard plan. All told, the items in the preneed agreement with asterisks next to them total $2,316.

Below the list of services in the preneed agreement is a list of items included in the retail agreement. Next to a merchandise heading, appears a notation that merchandise is "[s]old on a retail basis" and that "[n]o merchandise is included on any [p]reneed [f]uneral [a]greement." The list of items included in the retail agreement does not include a processing fee, and items in the retail agreement with asterisks next to them total $1,233. After the itemized lists of costs, the price list provides that if the items purchased in the standard plan were purchased separately, the "total cost of these items is $3,549.00 (depending on selected disposition of cremated remains)."

T.G. purchased the standard plan. Trident charged him $637 for the services in the preneed agreement and $1,233 for merchandise in the retail agreement. Trident further added the $234 processing fee to the retail agreement, instead of to the preneed agreement as indicated in the price list.[2]

The preneed agreement provided several terms regarding cancellation of the agreement. First, the terms and conditions provided in part, "All written requests for revocation by the [t]rustor of a trust will be honored within fifteen (15) days of receipt thereof. The portion of this contract that is fully refundable are the funds held in trust and earned income, less any applicable administrative fees allowed by law and a revocation fee." The next page of the preneed agreement provided, "All funds received will be deposited with the trustees within thirty (30) days and held in a trust [that] is fully refundable upon fifteen (15) days' written notice except when the beneficiary is the recipient of public assistance . . . , and this trust agreement has been designated as being

_____

[2] T.G. entered a finance plan with Trident to pay for the standard plan, wherein he paid $35 a month, after an initial downpayment of $299, for four years four months, with no interest. The money paid under the finance plan funded the trust last. At the time of T.G.'s death, $85.15 was in the trust account and his sister funded the rest of his cremation services. T.G.'s sister further claimed she did not receive, nor was she in possession of, the merchandise sold to T.G. as part of the retail agreement.

irrevocable . . . ." (Boldface & some capitalization omitted.) The next paragraph provides, "This [a]greement may be cancelled within thirty (30) days of the date of acceptance of this [a]greement, and a full refund of all monies paid will be made to [the] [p]urchaser."

T.G. also signed the retail agreement, which provided at the top, "Retail merchandise purchased prior to death is not considered part of a preneed funeral agreement. Payment received for the merchandise described below will not be held in trust. Retail merchandise will be delivered to the [p]urchaser." T.G. also signed a notice in the retail agreement providing, "RETURNS – You may, within thirty (30) days of the acceptance of this [a]greement, return the merchandise and receive a full refund. Instructions for return will be included with the merchandise. Your return pursuant to this section is the cancellation of this [retail] [a]greement and also operates as [the] [p]urchaser's written request to cancel [the preneed agreement], unless the [preneed agreement] has been made irrevocable."

In 2019, T.G. died and his sister filed a complaint with the Bureau pertaining to Trident's sales tactics. The Bureau investigated and issued a notice of citation finding Trident failed to place in trust as required by the Short Act all money collected from T.G. to pay for the standard plan. It further found that Trident made four misrepresentations while selling the standard plan: (1) Trident misrepresented that customers could get a refund by cancelling the agreement within 30 days when they could in fact cancel at any time; (2) Trident failed to indicate the retail agreement was a preneed contract given it was collateral to the preneed agreement when entered as part of the standard plan; (3) Trident charged processing fees even though the fees were not included in the price list; and (4) Trident misrepresented that T.G.'s cremated remains would be delivered by a Trident employee to Oceanside. The Bureau ordered Trident to abate its practices without issuing a fine.

5

Trident appealed the Bureau's citation. An administrative law judge found that the Short Act required Trident to place all funds to purchase the standard plan in trust because the retail agreement was collateral to the preened agreement. The administrative law judge also sustained the Bureau's misrepresentation findings, except for the finding concerning the delivery of T.G.'s cremated remains. Trident filed a petition for writ of mandate in the superior court, challenging the administrative law judge's decision. The superior court denied the petition.

Trident appeals.

## DISCUSSION[3]

Code of Civil Procedure section 1094.5 "governs judicial review of adjudicatory decisions by administrative agencies." (*Akella v. Regents of University of California* (2021) 61 Cal.App.5th 801, 813.) The inquiry in such a case extends to whether the respondent to the administrative mandate petition (here, the Bureau) "has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion is established if the Bureau has failed to proceed "in the manner required by law, the [Bureau's] order or decision is not supported by the findings, or the findings are not supported by the evidence." (*Ibid.*) Whether the record supports the agency's findings and factual basis for its decision or order is a question of substantial evidence in light of the entire administrative record. (Code Civ. Proc., § 1094.5, subd. (c); *Akella*, at pp. 813-814.) However, to the extent the administrative decision involves a question of law, including the interpretation of statutes and application of judicial precedent, the reviewing court exercises independent judgment. (*Akella*, at p. 815; *McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921-922.)

---

[3] The parties' requests for judicial notice are granted.

In applying this standard on appeal, "we do not 'undertak[e] a review of the trial court's findings or conclusions. Instead, "we review the matter without reference to the trial court's actions. In mandamus actions, the trial court and appellate court perform the same function." ' " (*Jefferson Street Ventures, LLC v. City of Indio* (2015) 236 Cal.App.4th 1175, 1197.)

I

*Trident Was Required To Hold In Trust Money*

*Received To Purchase The Standard Plan*

Trident contends section 7735 does not apply to the money it received to purchase the merchandise contained in the retail agreement because the merchandise was delivered. We disagree, because although the merchandise was delivered, the contract providing for purchase and delivery of the merchandise was collateral to a preneed contract.

Chapter 12 of the Business and Professions Code governs the funeral and burial business. In the last article of that chapter, the Legislature enacted the Short Act, which governs preneed agreements entered by funeral establishments. (§ 7735 et seq.) The Short Act, enacted in 1965, "sets out an elaborate plan for the control of funds accruing under preneed funeral contracts. Its obvious purpose is to recognize the utility of a prepaid funeral arrangement and at the same time assure its performance by requiring that all consideration paid pursuant thereto be held in trust until the need materializes. 'While such a requirement may seem harsh to some it has been observed that the anticipated passage of time between execution of the agreement and performance establishes a fertile field for fraud, deceit and imposition with the ensuing solvency imminent. [Fn. omitted.] [Citations.] The Legislature has determined that the public interest in securing performance of prepaid funerals was greatly endangered by the large sums attributed to sales expenses and commission.' " (*Mount Vernon Memorial Park v. Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 885 (*Mount Vernon*).)

7

Section 7735, the first section in article 9, is broad. It sweepingly provides, "No funeral establishment . . . shall enter into or solicit any preneed arrangement, contract, or plan . . . requiring the payment . . . for the final disposition of human remains or for funeral services or for the furnishing of personal property or funeral merchandise, wherein the use or delivery of those services, property or merchandise is not immediately required, unless the contract requires that all money paid directly or indirectly and all securities delivered under that agreement or under any agreement collateral thereto, shall be held in trust for the purpose for which it was paid or delivered until the contract is fulfilled according to its terms." (§ 7735.)

Trident contends section 7735 exempts from the trust requirement all contracts, regardless of their collateral nature, that require immediate use or delivery. The Bureau counters that section 7735 encompasses within the trust requirement any agreement to purchase services or merchandise that are not presently needed. We review de novo the statutory interpretation question of whether the Short Act exempts delivered merchandise from the trust requirement contained in section 7735. (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1544.) "We seek to determine the Legislature's intent and ' "first examine the statutory language, giving it a plain and commonsense meaning." [Citation.] We do not consider statutory language in isolation; instead, we examine the entire statute to construe the words in context. [Citation.] If the language is unambiguous, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." ' " (*Williams v. FCA US LLC* (2023) 88 Cal.App.5th 765, 775-776.)

We cannot read section 7735 as broadly as the Bureau suggests we do. Section 7735 limits the trust requirement to "any preneed arrangement, contract, or plan . . . *wherein* the use or delivery of [the subject] services, property, or merchandise is not

8

immediately required." (Italics added.) The term *wherein* refers to the terms of the arrangement or contract. Thus, application of the provision does not hinge on whether the use or delivery of the service or merchandise contracted for is presently required, but whether the contract requires present use or delivery. Further, later in section 7735, the focus is again on the terms of the contract entered, as opposed to the items contracted for. Specifically, the provision provides, "[T]he contract requires that all money paid directly or indirectly . . . *under* that agreement or *under* any agreement collateral thereto, shall he held in trust." (§ 7735, italics added.)

Section 7735, however, is broader than Trident would have us believe with its argument that section 7735 exempts from the trust requirement all contracts, regardless of their collateral nature, requiring immediate use or delivery. Section 7735 clearly includes in its trust requirement all contracts that are collateral to a preneed contract. This includes collateral contracts pertaining to delivered services (*American Funeral Concepts v. Board of Funeral Directors & Embalmers* (1982) 136 Cal.App.3d 303, 310-313 (*American*)), and would logically also include collateral contracts pertaining to delivered merchandise (52 Ops.Cal.Atty.Gen. 202, 205, 206 (1969)). Indeed, if section 7735 applied only to undelivered merchandise and services, the agreement would be preneed and then there would be no reason to include the term "agreement collateral thereto" in the language of the section. But the language is there and, by its inclusion, the Legislature extended the applicability of section 7735 beyond preneed agreements alone.

With this in mind, Trident attempts to avoid the application of section 7735 altogether by arguing the retail agreement is not a collateral contract to the preneed agreement, and thus falls outside its terms. We disagree. In *American*, we concluded a contract for a membership to arrange funeral-related services was collateral to the preneed contract for those future funeral-related services. (*American*, *supra*, 136 Cal.App.3d at pp. 306-307, 312-313.) The membership contract provided that the funeral establishment would presently and in the future secure various documents

9

necessary to dispose of a body so that disposition would promptly occur when the need arose. (*Id*. at p. 310, fn. 6.)

We held that a disclaimer contained in the membership contract that the membership contract was a separate contract from the preneed contract was not effective because "a critical linkage remained. The guarantee of a fixed price for the funeral services could not be obtained without the membership [contract]." (*American*, *supra*, 136 Cal.App.3d at pp. 312-313.) We further reasoned, "The uncontradicted evidence shows that only members (that is those who paid the basic service charge) were enabled to take advantage of the guaranteed funeral contract. The record compels the inference that the substantial inducement for paying the membership charge was to obtain the right to a fixed-price funeral. The basic membership contract is collateral to the fixed price funeral contract thereby requiring that moneys paid for it be placed in trust. [¶] Any other result would allow patent circumvention of section 7735." (*American*, at p. 313, fn. omitted.)

Similar to our conclusion in *American*, the Attorney General issued an opinion advising that funeral establishments were required to place in trust money paid under contracts for delivered merchandise and services when those contracts were collateral to preneed contracts. (52 Ops.Cal.Atty.Gen., *supra*, at pp. 202, 204-207.) There, the Attorney General considered two sample cases where the funeral establishments entered preneed contracts with customers related to funeral services, property, and merchandise to be provided in the future, and delivered all money paid under the contract to a trust. (*Id*. at pp. 204-205.) At the same time, the funeral establishments entered a service contract, requiring payment of money in exchange for "counseling personnel, [f]amily [g]uides, and permanent identification cards." (*Id*. at p. 205.) "Each service contract state[d] it [wa]s not to be considered or construed as part of the trust agreement. However, the interrelationship between the two transactions [wa]s apparent. One service

10

contract even provide[d] that the sums paid pursuant thereto [we]re a credit toward a memorial service which, of course, [wa]s the subject of the trust agreement." (*Ibid*.)

The Attorney General's opinion advised these contracts were collateral, reasoning, "The two agreements [we]re entered into at substantially the same time. The apparent objective of the counseling provided under the service contract [wa]s the sales presentation of the preneed funeral plan. The apparent purpose of the provided [f]amily [g]uides, identification cards and other materials [wa]s to expedite the future performance of the preneed trust agreement. The amount paid pursuant to the service contract totaled with the amount paid under the trust agreement [wa]s approximately equal to or less than the retail value of the funeral service, property and merchandise selected in the trust agreement. Were it not for the trust agreement the service contract would have no existence." (52 Ops.Cal.Atty.Gen., *supra*, at p. 206.)

Trident argues the retail agreement is not collateral to the preneed agreement because T.G. was not required to enter both agreements to take advantage of the preneed services, unlike the facts in *American*, and by implication the examples in the Attorney General's opinion recited above. Neither *American* nor the Attorney General's opinion limited its analysis to whether the contracts were mutually exclusive, and nor shall we. Both authorities considered the circumstances under which the parties entered the contracts, the contracts' degree of interdependence, and whether the contracts undermine the purpose of the Short Act. (*American*, *supra*, 136 Cal.App.3d at pp. 312-313; 52 Ops.Cal.Atty.Gen., *supra*, at pp. 203-206.) We shall do the same.

Here, the agreements did more than pertain to the same subject matter. The agreements were entered at the same time and were presented as a package deal. The agreements were explained to T.G. using the same document, i.e., the price list, and the benefits of entering the agreements together were explicitly mentioned in the price list. Like in *American*, the fact that Trident asserted the retail agreement was separate from the preneed agreement is meaningless given the joint presentation of the agreements and

11

named benefits of entering the agreements together. (*American*, *supra*, 136 Cal.App.3d at pp. 312-313; see Civil Code, § 1642 ["Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together"].)

The terms of the agreements were also interdependent. Like in *American*, Trident guaranteed a benefit under the preneed agreement contingent on whether its customers also entered the retail agreement. (*American*, *supra*, 136 Cal.App.3d at pp. 312-313.) Further, by cancelling the retail agreement the terms presume the customer was also cancelling the preneed agreement. While true the retail agreement could exist independent of the preneed agreement, there is an interdependence between the agreements that cannot be ignored.

Indeed, the type of interdependence present here serves to undermine the Short Act. As the superior court observed, the standard plan induced customers to enter the retail agreement, instead of purchasing the preneed agreement in isolation. Indeed, it was *more* expensive for T.G. to purchase prearranged funeral services from Trident ($2,316) than it was for him to purchase prearranged funeral services and merchandise ($2,104). But by T.G. taking advantage of the deal, Trident was able to divert funds it would otherwise hold in trust for future services. In this case, Trident reduced the price of only the preneed agreement, and therefore the amount held in trust, while maximizing the funds immediately available for its overhead and commissions. This type of conduct creates a fertile ground for fraud reminiscent of the funeral industry before enactment of the Short Act when 15 to 30 percent of money paid under preneed agreements was diverted from ensuring the availability of services at the time of need. (52 Ops.Cal.Atty.Gen., *supra*, at p. 204, fn. 2; accord *Mount Vernon*, *supra*, 79 Cal.App.3d at p. 885.)

Trident argues the Bureau never alleged it had insufficient funds in trust under the standard plan to perform cremation services at the time of need, and thus Trident's

conduct does not undermine the Short Act.  This argument is irrelevant to whether the agreements are collateral.  The forms of the agreements plus the diversion of funds from the trust are sufficient.  Further,  the retail agreement shifted the responsibility to supply merchandise at the time of need onto the contracting party who necessarily will not be present at the time of need.  It is far less likely that party can ensure availability of the merchandise at the time of need than the funeral home that was entrusted in the related contract with the contracting party's cremation needs.  Accordingly, the retail agreement is collateral to the preneed agreement.

Undeterred, Trident argues that section 7741 more specifically exempts merchandise from being considered a collateral contract by providing that "[n]othing in this article shall apply to cemetery property; cemetery commodities; cemetery service; or merchandise that is delivered as soon as paid for." (§ 7741.)  Again, we disagree with Trident's contention.  As demonstrated, section 7735 focuses on the requirements of the contract or agreement entered.  If the contract does not require immediate use or delivery, then the contract is a preneed contract, and any money paid under that preneed contract, and all contracts collateral thereto, fall within the parameters of the section.  Read in context, section 7741's exception for merchandise and cemetery service, property, and commodities delivered when paid for pertains to noncollateral agreements on those subjects.  For this reason we reject Trident's contention we are adding words to section 7741, namely, " '[n]othing in this article shall apply to . . . merchandise that is delivered as soon as paid for *unless the merchandise is sold as part of a collateral agreement*,' " and creating tension between sections 7735 and 7741.  We arrived at our interpretation of the relevant provisions through a plain reading of the statutes within the context of the statutory scheme of the Short Act.  There is no tension as it applies to the facts of this case.

To the extent the interpretation of section 7741 is ambiguous, the Legislature's intent supports our interpretation.  The trust requirements were enacted to place a "harsh"

13

burden on funeral establishments to address the "fertile field for fraud." (52 Ops.Cal.Atty.Gen., *supra*, at p. 204; accord *Mount Vernon*, *supra*, 79 Cal.App.3d at p. 885.) Permitting merchandise contained in a collateral agreement to be exempted from the trust requirement would contribute to a fertile ground for fraud by permitting the diversion of funds from the trust. It is unreasonable to read the Short Act to allow for fraudulent practices and diversion of funds, as long as the collateral contract at issue involved merchandise.

This is not to say funeral establishments cannot sell preneed merchandise to a customer pursuant to a retail contract. But making the retail contract collateral to a preneed contract invokes the Short Act and places upon funeral establishments the responsibilities attendant to the Short Act—ensuring the availability of services and merchandise at the time of need.

Trident points to the Bureau's regulation to support its interpretation of the Short Act to exclude money paid for delivered merchandise from the trust requirement; specifically, that "[d]elivery of merchandise within the meaning of . . . [s]ection 7741 shall mean actual personal delivery to a purchaser . . . of funeral merchandise that . . . is intended to be used in connection with a preneed arrangement or any agreement collateral thereto." (Cal. Code Regs., tit. 16, § 1262, subd. (a).) Contrary to Trident's view, the regulation is consistent with our interpretation of section 7735 because it applies to merchandise that "is intended to be *used in connection with* a preneed arrangement or any arrangement collateral thereto." (Cal. Code Regs., tit. 16, § 1262, subd. (a), italics added.) The regulation is silent as to its applicability to merchandise that *is part* of a preneed arrangement or arrangement collateral thereto. Further, the regulation explicitly provides that it interprets section 7741. (Cal. Code Regs., tit. 16, § 1262, subds. (a)-(b) [explaining delivery "within the meaning of [s]ection 7741"].) Thus its relevance as to the proper interpretation of section 7735 is limited.

Trident further points to the Bureau's past practices of allowing funeral homes to engage in the type of conduct the Bureau now considers a violation. We are confident in our interpretation of the relevant statues; the Bureau's past practices do not make us question our conclusion.

Thus, the Short Act requires Trident to place in trust the money paid to purchase the standard plan.

II

*The Administrative Law Judge Properly Upheld The*

*Bureau's Three Misrepresentation Findings*

The Bureau found Trident violated section 7692, which provides that "[m]isrepresentation or fraud in the conduct of the business or the profession of a funeral director or embalmer constitutes a ground for disciplinary action." Trident challenges the Bureau's three misrepresentation findings upheld by the administrative law judge and superior court on both legal and factual grounds.

As to its legal challenges, Trident contends the definition of misrepresentation contained in section 7692 requires an intent on behalf of Trident to deceive and proof that a customer was actually deceived. Trident also contends section 7692 prohibits only misrepresentation and fraud and not concealment of information, as the superior court found.

The problem with Trident's argument regarding intent is that the superior court found Trident abandoned it in its reply brief. Trident argues the superior court was wrong in this regard because a reply brief cannot be expected to regurgitate everything in an opening brief. The superior court, however, first made this finding in its tentative ruling. Trident did not correct the superior court at argument on the merits of the petition or move for reconsideration after the order was deemed a final order. It was not until on appeal that Trident revisits its argument that misrepresentation under section 7692 requires an intent to deceive, asking us to decide this issue in the first instance. It is too

15

late; the argument is forfeited.  (*Porterville Citizens for Responsible Hillside Development v. City of Porterville* (2007) 157 Cal.App.4th 885, 912 ["It is axiomatic that a party may not complain on appeal of rulings to which it acquiesced in the lower court"].)

As to whether concealment can serve as a basis for finding misrepresentation under section 7692, we agree with the superior court that concealment is a viable theory of misrepresentation.  Section 7692's focus is on the conduct of the business or profession of a funeral establishment, which includes contracting with customers.  The definition of fraud in the context of contracting has long included the act of concealment.  (*Belden v. Henriques* (1857) 8 Cal. 87, 88-89 ["Fraud may consist in the misrepresentation, or the concealment of material facts"].)  We presume the Legislature knew of this existing interpretation and intended to incorporate it in section 7692 when it was enacted in 1939.  (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 785; Stats. 1939, ch. 39, § 1.)

Trident cites *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 339-345 as an example of when our Supreme Court interpreted the term misrepresented to exclude the common synonym misled.  Our Supreme Court, however, interpreted a different statute with different language enacted in a different chapter of the Business and Professions Code with a different statutory scheme and supporting legislative intent.  (*Ibid.*)  Trident has not pointed us to any statutory language or legislative intent indicating the terms fraud and misrepresentation in section 7692 exclude the commonly used interpretation of conceal.

Finally, it was not necessary for the Bureau to demonstrate T.G. was actually deceived for it to find that Trident misrepresented when contracting with him.  As discussed, the focus of section 7692 is on the conduct of the business or profession of a funeral establishment.  It is not whether a customer can bring an actionable claim against a funeral establishment, undermining Trident's contention that elements for a common

16

law contract claim supply the standard for finding a misrepresentation. This is especially true in the funeral establishment context, and even more so in the context of preneed contracts, where the other contracting party is unlikely to be present at the time the contract is performed and misrepresentations become apparent. Therefore, we see no error in the superior court's focus on the effect Trident's conduct had on a reasonable purchaser of its services and merchandise.

Trident's factual contentions fair no better. Trident argues it did not conceal any information related to the return policy for the preneed agreement because it provided all the information, albeit in various places throughout the preneed agreement. Specifically, while the preneed agreement provides before signing that the preneed agreement can be cancelled within 30 days for a full refund, immediately preceding that disclosure and in the terms and conditions of the preneed agreement, customers were informed they could cancel the preneed agreement and receive a refund within 15 days, minus appropriate costs. The problem with Trident's argument is that none of the disclosures stated customers could cancel the preneed agreement *at any time*; which is the cancellation policy imposed by law. (§ 7737, subd. (b)(2).) The only time constraint communicated in the agreements regarding cancellation was the 30-day cancellation period, which served the purpose of misleading a reasonable customer into believing refunds would be delivered within 15 days as long as the preneed agreement was cancelled within 30 days. Accordingly, substantial evidence supports the administrative law judge's finding that Trident concealed information regarding its refund policy for the preneed agreement such that a reasonable customer would be misled.

Substantial evidence further supports the administrative law judge's finding that Trident misrepresented the preneed character of the retail agreement. As demonstrated, the retail agreement was collateral to the preneed agreement, and thus was also subject to the trust requirements contained in section 7735. Because Trident asserted that the retail

17

agreement was not subject to the trust requirements, it misrepresented the character of the retail agreement.

Finally, Trident contends it did not misrepresent the processing fee charged to T.G., it merely placed the notation that a processing fee would be charged in the wrong place, i.e., Trident indicated in the price list that the processing fee was attached to the preneed agreement instead of the retail agreement. While this may be true, the misrepresentation of which agreement the processing fee attached to was material. First, the misrepresentation increased the price for the items included in the retail agreement beyond what was listed in the price list. Second, by purporting to attach the processing fee to the preneed agreement and then indicating the money spent to purchase the preneed agreement would go into trust, Trident represented to customers that the processing fee would be available for later use. Instead, the processing fee was charged as part of the retail agreement and immediately went into Trident's operating budget and not to ensure services at the time of need. Accordingly, the administrative law judge did not err by finding Trident made three misrepresentations when contracting with T.G.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
BOULWARE EURIE, J.